Case 1:25-cv-06003-JMF   Document 5   Filed 07/30/25   Page 1 of 14
Case 1:25-mc-00307   Document 1-7 (Ex Parte)   Filed 07/22/25   Page 1 of 14

25 CV 06003

JUDGE FURMAN

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NAHLA SOLIMAN, <br><br> *Plaintiff,* <br><br> -against- <br><br> JOHN DOE <br><br> *Defendant* | Case No.: <br><br> **VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |

Plaintiff Nahla Soliman ('Plaintiff'), by and through her undersigned counsel, alleges as follows based upon knowledge as to her own acts and upon information and belief as to all others:

## NATURE OF THE ACTION

1. Plaintiff files this verified complaint for emergency injunctive relief and damages to halt the disappearance of $134,504.45 in stolen digital assets. Plaintiff is the victim of an audacious and highly sophisticated cryptocurrency scam. The fraud was orchestrated through an AI-generated deep-fake livestream that aired on YouTube and impersonated President Donald Trump. Branded as a joint announcement from the Trump/Vance 2024 campaign and a fictitious 'Federal Reserve for Crypto,' the livestream urged Americans holding cryptocurrency to scan a QR code on the screen and transfer assets to designated wallet addresses, promising to 'double' deposits instantly and return the proceeds to the sender's originating wallets.

2. Deceived by the livestream's forged government seals, fabricated endorsements, and professional presentation, Plaintiff transferred 0.23199682 Bitcoin (BTC), 3.999979 Ethereum (ETH), and 645.03343219 Solana (SOL)—then-worth $134,504.45 collectively—to wallets controlled by Defendant on July 3, 2025. However, the livestream and its video artifacts

disappeared from the YouTube platform approximately one hour later—triggering Plaintiff's realization that the livestream was a scam.

3.  Deplorably, within that time, Plaintiff's stolen cryptocurrencies were bridged and laundered into 126,688.00 Tether (USDT) [1] on the Solana blockchain and deposited into a single OKX Exchange account[2] at wallet address: 7mDMLMuAnT3j1KGP9F5CQkvzbmAvEAKYQtk5kne2p3bP (the "Wallet Address")—as confirmed by CYBERA, a professional blockchain forensics tracing firm hired by Plaintiff to trace her stolen assets.

4.  Relying on CYBERA's Tracing Report, on July 16, 2025, OKX Exchange voluntarily issued a temporary freeze on the account associated with the Wallet Address—but for a period of up to seven (7) days.

5.  OKX has warned that the temporary voluntary freeze will expire on July 23, 2025 at the latest, unless Plaintiff provides a law enforcement subpoena or court order to maintain it. If the freeze lifts, the John Doe Defendant will irretrievably dissipate the traced cryptocurrency, causing irreparable harm to Plaintiff that money damages cannot remedy. John Doe has already engaged in laundering behavior by converting the cryptocurrency into USDT.

6.  Plaintiff therefore seeks immediate injunctive relief in the form of a Temporary Restraining Order and Preliminary Injunction to enjoin Defendant from dissipating the stolen funds and maintain a freeze on 126,688.00 USDT (Tether) that has been traced to the Wallet Address at OKX Exchange. Plaintiff also asserts claims for violation of the Racketeer Influenced

---

[1] USDT stands for Tether, a type of stablecoin in the cryptocurrency ecosystem. It is designed to maintain a 1-to-1 value peg with the U.S. dollar, meaning 1 USDT ≈ 1 USD.

[2] OKX is a global cryptocurrency exchange platform that offers digital asset trading services to users worldwide, including U.S. residents, through its online interface and mobile applications.

and Corrupt Organizations Act ("RICO"), conversion and unjust enrichment, and seeks the imposition of a constructive trust over the traced assets and their proceeds.

## PARTIES

7. Plaintiff Nahla Soliman is an individual who resides in the State of New Jersey. She is a user of Coinbase, a cryptocurrency exchange platform headquartered in the United States.

8. Defendant John Doe is an unknown individual or individuals who perpetrated the Donald Trump Coin investment impersonation scam against Plaintiff, fraudulently induced her to transfer cryptocurrency assets, and currently controls or has access to the Wallet Address(es) where Plaintiff's cryptocurrency assets were transferred in the OKX account containing the traced funds.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as Plaintiff is a citizen of New Jersey and, upon information and belief, Defendant is a foreign national not a citizen of any U.S. state, and the amount in controversy exceeds $75,000, exclusive of interest and costs. This Court also has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968.

10. This Court has personal jurisdiction over the John Doe Defendant pursuant to Fed. R. Civ. P. 4(k)(2) because, upon information and belief, Defendant is a foreign national or entity not subject to jurisdiction in any state's court of general jurisdiction, and the exercise of jurisdiction comports with due process. Defendant purposefully directed fraudulent conduct at the United States by creating and broadcasting a deep-fake livestream on YouTube, impersonating the President of the United States, targeting U.S. citizens, utilizing U.S.-based cryptocurrency

infrastructure, and causing foreseeable harm within this forum. Defendant's use of U.S.-pegged stablecoin—USDT—and U.S.-accessible exchanges further ties the scheme to the United States, making the exercise of jurisdiction reasonable and consistent with fair play and substantial justice.

11. Venue is proper in this District pursuant to 18 U.S.C. § 1965(a) and (b), and 28 U.S.C. § 1391(b) and (c).

## FACTUAL ALLEGATIONS

### A. The Fraudulent LiveStream Donald Trump Impersonation QR Code Scam

12. On July 3, 2025, Plaintiff encountered a livestream broadcast on YouTube titled 'TRUMP/VANCE – Federal Reserve for Crypto.' The broadcast featured an AI-generated deep-fake impersonation of President Donald Trump and was overlaid with forged federal seals and branding.

13. The broadcast falsely claimed to be a livestreamed joint announcement from the Trump/Vance 2024 campaign and a fictitious 'Federal Reserve for Crypto,' urging American cryptocurrency holders to act immediately, promising that any cryptocurrency transferred to designated addresses would be doubled instantly and returned to the sender's originating wallet.

14. A QR code anchored in the livestream broadcast redirected viewers to a landing page that displayed three wallet addresses—one each for Bitcoin, Ethereum, and Solana.

### B. The Transfers

15. Trusting the representations, Plaintiff sent cryptocurrency from her verified Coinbase custodial account to the displayed addresses as follows: [3]

---

[3] **Exhibit A:** Coinbase Transaction History Report for Nahla Soliman at p. 2, attached hereto and incorporated herein by reference.

    a. Bitcoin: 0.23199682 BTC to address bc1qgyv40w4m7uqcmxf0d34rk00d5nuly9mqywps0u at 9:05:55 p.m. EDT, July 3, 2025;

    b. Solana: 645.03343219 SOL to address 8xzxovfR6J37v7ShgyD1tcMDsTV12UCGujYYYXi6Xetj at 9:06:35 p.m. EDT, July 3, 2025; and

    c. Ethereum: 3.999979 ETH to address 0x940cee28298ef9f5b1ee79c95cf593439730ca7f at 9:15:53 p.m. EDT, July 3, 2025.[4]

16. Approximately one hour after Plaintiff completed the transfers the livestream broadcast abruptly vanished from the YouTube Platform—and Plaintiff found her originating wallet accounts to be empty. At that point Plaintiff realized she had been defrauded.

### C. Immediate Reports to Authorities

17. Immediately upon discovering the scam, Plaintiff filed a complaint with the FBI's Internet Crime Complaint Center (IC3) on July 3, 2025, at 10:35 p.m. EDT.[5]

18. Plaintiff filed a police report with the Bloomfield Police Department, which was assigned case number 25-54383.

19. On July 7, 2025, the United States Secret Service acknowledged receipt of Plaintiff's case and confirmed the matter was forwarded to the Newark Field Office.[6]

---

[4] Coinbase's transaction records display timestamps in Coordinated Universal Time (UTC). All times stated in this pleading are expressed in Eastern Daylight Time (UTC − 4), the local time zone for Plaintiff and this Court. Accordingly, each UTC timestamp in the Coinbase records is four (4) hours earlier. When converted to EDT the Bitcoin transaction at 01:05:55 UTC, July 4, 2025, corresponds to 9:05:55 p.m. EDT, the Solana transaction at 01:06:35 UTC, July 4, 2025, corresponds to 9:06:35 p.m. EDT, July 3, 2025, and the Ethereum transaction at 01:15:53 UTC, July 4, 2025, corresponds to 9:15:53 p.m. EDT, July 3, 2025.

[5] **Exhibit B**: FBI IC3 Complaint filed July 3, 2025 (documenting estimated loss of $145,000) attached hereto and incorporated herein by reference.

[6] **Exhibit C**: Email correspondence with U.S. Secret Service from email address CryptoFraud@usss.dhs.gov, dated July 7, 2025, confirming case referral to Newark Field Office attached hereto and incorporated herein by reference.

### D. Professional Blockchain Tracing—CYBERA Reports

20. Concurrently, Plaintiff contacted Coinbase to report the fraud and was assisted through the Coinbase Aftercare Program, which connected Plaintiff with CYBERA, a professional blockchain analysis and asset recovery firm, to trace Plaintiff's stolen cryptocurrency.

21. CYBERA issued an Initial Tracing Report on July 4, 2025 (Case Reference: a1857adac868), which successfully traced Plaintiff's stolen funds through various blockchain transactions and conversions.[7]

22. According to CYBERA's expert analysis:

   a. Plaintiff's Bitcoin were converted to USDT and transferred to the Solana blockchain through the Birdgers.xyz decentralized bridge;

   b. Plaintiff's Ethereum were converted to USDT and transferred to the Solana blockchain through the Relay.link decentralized bridge; and

   c. Plaintiff's Solana was exchanged into USDT through the Chainflip decentralized service and a decentralized swap service.[8]

23. CYBERA traced 126,688.00 USDT to wallet address 7mDMLMuAnT3j1KGP9F5CQkvzbmAvEAKYQtk5kne2p3bP, which was identified as a deposit address associated with OKX Exchange.[9]

---

[7] **Exhibit D**: CYBERA Initial Tracing Report dated July 4, 2025 (Case Reference a1857adac868), attached hereto and incorporated herein by reference.

[8] *Id.* at p. 1.

[9] *Id.*

### E. OKX Exchange's Temporary 7-Day Voluntary Freeze

24. Upon receiving a request from CYBERA, substantiated by the CYBERA Tracing Report, OKX's Account Safety Team imposed a temporary seven (7) day voluntary freeze on the Wallet Address on July 16, 2025.[10]

25. On July 16, 2025, OKX Exchange communicated in writing to Plaintiff through CYBERA, confirming:

   a. They had identified the relevant account associated with wallet address 7mDMLMuAnT3j1KGP9F5CQkvzbmAvEAKYQtk5kne2p3bP;

   b. They had placed a voluntary freeze on this account;

   c. The freeze would remain in place for 'a tentative period of up to 7 days';

   d. They required confirmation from law enforcement authorities or a court to maintain the freeze beyond this period; and

   e. OKX retained the right to lift the freeze in their discretion without further notice.[11]

26. OKX explicitly warned that it would exercise its discretion to lift the seven-day temporary voluntary freeze without further notice absent a subpoena or court order by July 23, 2025.[12]

### F. Urgent Need for Court Intervention

27. The voluntary freeze placed by OKX Exchange is set to expire on July 23, 2025, just days from the date of this filing.

---

[10] **Exhibit E**: Email string containing correspondence from OKX Exchange to CYBERA dated July 16, 2025, confirming voluntary temporary seven (7) day freeze of wallet address: 7mDMLMuAnT3j1KGP9F5CQkvzbmAvEAKYQtk5kne2p3bP ("OKX Freeze Email") at p. 3, attached hereto and incorporated herein by reference.

[11] *Id.*

[12] *Id.*

7

28. Without immediate court intervention in the form of a Temporary Restraining Order and Preliminary Injunction, OKX Exchange will lift the freeze on the account containing the proceeds of Plaintiff's assets.

29. CYBERA observes that cases concerning cryptocurrency scams, specifically Plaintiff's case, require immediate review, swift reaction time, and the involvement of authorities to increase the chances of recovery.[13]

30. Once the freeze is lifted, the John Doe account holder will be able to transfer, convert, or otherwise dissipate the cryptocurrency assets beyond the reach of this Court and any potential judgment.

31. Plaintiff faces imminent and irreparable harm because: (i) cryptocurrency transactions are generally irreversible and can be executed instantaneously across international borders; (ii) Defendant's fraudulent conduct and demonstrated pattern of laundering stolen assets through multiple blockchain networks indicates a high risk of dissipation; and (iii) once the short freeze expires, Defendant can transfer the funds beyond this Court's jurisdiction within seconds, rendering any judgment hollow.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (18 U.S.C. §§ 1961-1968)

32. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

---

[13] **Exhibit E** at p. 2: Email string containing correspondence dated July 16, 2025 from CYBERA to Plaintiff informing Plaintiff that "Time is Critical" to "maintain the freeze and initiate the return process" of her stolen cryptocurrency; Exhibit D, CYBERA Tracing Report at p. 2.

33. At all relevant times, Defendant and other unknown co-conspirators (collectively, the 'Enterprise') constituted an 'enterprise' as defined by 18 U.S.C. § 1961(4), engaged in, and whose activities affected, interstate and foreign commerce.

34. The Enterprise had an organizational structure designed to function as a continuing unit, with individuals playing specific roles in the creation of deep-fake livestream YouTube broadcasts, maintenance of cryptocurrency wallets, monitoring of victims' transfers, and laundering of stolen cryptocurrency through various blockchain networks and exchanges.

35. Defendant, as a member and operator of the Enterprise, conducted and participated in the conduct of the Enterprise's affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

36. The pattern of racketeering activity conducted by Defendant included multiple acts of wire fraud in violation of 18 U.S.C. § 1343, specifically:

   a. Creating and disseminating an AI-generated deep-fake livestream broadcasts impersonating President Donald Trump through interstate wire communications via YouTube;

   b. Making fraudulent representations through interstate wire communications that cryptocurrency transferred to specified wallet addresses would be 'doubled' and returned;

   c. Displaying fraudulent government seals and endorsements through interstate wire communications to create the appearance of legitimacy; and

   d. Using interstate wire communications to transmit QR codes directing victims to transfer cryptocurrency to Defendant-controlled wallets.

37. These acts of wire fraud constitute 'racketeering activity' under 18 U.S.C. § 1961(1)(B).

38. The racketeering acts were related to each other as part of a common scheme to defraud U.S. cryptocurrency holders, including Plaintiff.

39. Upon information and belief, Defendant has engaged in this pattern of racketeering activity continuously since at least June 2025. Plaintiff's counsel has received notice of similar Donald Trump impersonation scams targeting other victims as early as June 2025, involving nearly identical deep-fake livestream broadcasts, fraudulent government branding, and promises to multiply cryptocurrency deposits. These reports indicate that the same or related Enterprise has perpetrated substantially similar schemes against multiple victims, demonstrating both the continuity and breadth of the racketeering activity.

40. These multiple related acts of wire fraud constituting racketeering activity occurred within ten years of each other, thereby constituting a 'pattern of racketeering activity' as defined in 18 U.S.C. § 1961(5).

41. As a direct and proximate result of Defendant's violation of 18 U.S.C. § 1962(c), Plaintiff has been injured in her business or property within the meaning of 18 U.S.C. § 1964(c), specifically in the amount of $134,504.45 representing the value of the cryptocurrency fraudulently obtained by Defendant.

42. Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover threefold her damages, plus costs and reasonable attorneys' fees.

**COUNT II: CONVERSION**

43. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

44. Plaintiff was the rightful owner of 0.23199682 Bitcoin (BTC), 3.999979 Ethereum (ETH), and 645.03343219 Solana (SOL), which had a combined value of approximately $134,504.45 at the time of their conversion.

45. Defendant wrongfully exercised dominion and control over Plaintiff's cryptocurrency by fraudulently inducing Plaintiff to transfer the cryptocurrency to Defendant's wallet addresses and subsequently converting the cryptocurrency to 126,688.00 USDT on the Solana blockchain held at the Wallet Address on the OKX Exchange.

46. Defendant's exercise of dominion and control over Plaintiff's cryptocurrency was unauthorized and in derogation of Plaintiff's rights as the rightful owner of the cryptocurrency.

47. As a direct and proximate result of Defendant's wrongful conversion of Plaintiff's cryptocurrency, Plaintiff has suffered damages in the amount of approximately $134,504.45.

## COUNT III: UNJUST ENRICHMENT

48. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

49. Defendant has been unjustly enriched by the receipt and retention of Plaintiff's cryptocurrency and its proceeds, including without limitation, the 126,688.00 USDT currently held in the Wallet Address at OKX Exchange.

50. Defendant obtained Plaintiff's cryptocurrency through fraud and misrepresentation, and Defendant has no legal right to retain these assets or their proceeds.

51. Principles of equity and good conscience require that Defendant not be permitted to retain the benefits of Plaintiff's cryptocurrency obtained through fraud.

52. Defendant should be required to return to Plaintiff the full value of the wrongfully obtained cryptocurrency, which is approximately $134,504.45.

## COUNT IV: CONSTRUCTIVE TRUST

53. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

54. By reason of the fraudulent and wrongful acts of Defendant as set forth above, Defendant holds the 126,688.00 USDT currently in the Wallet Address at OKX Exchange as a constructive trustee for the benefit of Plaintiff.

55. Plaintiff is entitled to the imposition of a constructive trust on the 126,688.00 USDT in the Wallet Address and any other assets or proceeds derived from Plaintiff's stolen cryptocurrency.

56. Equity demands the imposition of a constructive trust over all cryptocurrency assets fraudulently obtained from Plaintiff, including but not limited to traced proceeds of 126,688.00 USDT frozen at OKX Exchange.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant as follows:

A. Issue a Temporary Restraining Order, to be followed by a Preliminary Injunction enjoining Defendant and anyone acting in concert with Defendant from withdrawing, transferring, conveying or otherwise disposing of Plaintiff's stolen cryptocurrency, including, without limitation, the cryptocurrency at the Wallet Address: 7mDMLMuAnT3j1KGP9F5CQkvzbmAvEAKYQtk5kne2p3bP held at OKX Exchange and the associated account;

B. Award Plaintiff treble damages for violation of RICO, pursuant to 18 U.S.C. § 1964(c), in an amount no less than $403,513.35;

C. Impose a constructive trust over all stolen cryptocurrency assets at issue and any proceeds thereof including, without limitation, the 126,688.00 USDT held at wallet address: 7mDMLMuAnT3j1KGP9F5CQkvzbmAvEAKYQtk5kne2p3bP.

D. Order the return/disgorgement of all Plaintiff's cryptocurrency assets, their proceeds, or their equivalent value derived from Defendant's wrongful acts;

E. Awarding Plaintiff compensatory damages for conversion in an amount no less than $134,504.45;

F. Award Plaintiff pre-judgment and post-judgment interest as allowed by law;

G. Award Plaintiff costs of suit, including reasonable attorneys' fees; and

H. Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## VERIFICATION

I, Nahla Soliman, hereby verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on July 18, 2025

*[signature]*

Nahla Soliman

Dated: July 18, 2025

                                    Respectfully submitted

                                    _____

Crystal V. Venning, Esq.
**CRYSTAL VENNING LAW PLLC**
125 Park Avenue, 25th Floor
New York, New York 10017
Phone: (347) 352-2257
Email: cvenning@crystalvenninglaw.com

*Attorneys for the Plaintiff Nahla Soliman*

14